MAYER et al. v. REINECKE, Collector of Internal Revenue.

No. 37266.

District Court, N. D. Illinois.

May 18, 1939.

336

Mayer, Meyer, Austrian & Platt, of Chicago, Ill., for plaintiffs.

Robt. H. Jackson, Asst. Atty. Gen., Julian G. Gibbs, Sp. Asst. to Atty. Gen., and William J. Campbell, U. S. Dist. Atty., of Chicago, Ill., for defendant.

PHILIP L. SULLIVAN, District Judge.

On August 2nd, 1928, this action was instituted by the trustees under the will of Levy Mayer, deceased, for the recovery of estate taxes in the sum of $405,639.33, together with interest, alleged to have been erroneously and illegally assessed and collected.

The case is before me on defendant's general demurrer to plaintiffs' declaration.

Levy Mayer died August 14th, 1922, leaving his widow and two daughters surviving, and leaving a will, probated October 14th, 1923, which provided that all of his estate, real, personal and mixed, should vest in his executors, and after the payment of specific legacies and charitable bequests and all debts and expenses of administration, the residuary estate was to be paid to the executors as trustees, with directions to them to pay one-half of the income to the widow during her life, thereafter to the two daughters, with ultimate distribution to them of this one-half of the residuary estate. The remaining one-half of the estate was to be held by the trustees for the benefit of the two daughters.

August 13th, 1923, the executors filed with the Collector of Internal Revenue at Chicago, a federal estate tax return on behalf of the estate, showing a net taxable estate of $7,952,598.45, on which a tax of $1,232,019.69 was paid. Due to an increase in the value of the estate to $8,102,364.94 the Commissioner of Internal Revenue determined that an additional tax of $32,001.-26 was due, which was paid on December 8th, 1924.

August 4th, 1927, the executors filed a claim for refund in the sum of $405,639.33 on the grounds that (I) the value of the widow's one-third interest in decedent's personal property, alleged to be $1,500,000; and (II) the value of the widow's dower interest in decedent's real estate, alleged to be $600,000, were both illegally included in the value of decedent's taxable estate. The claim for refund was rejected in its entirety by the Commissioner, and plaintiffs were so notified on February 6th, 1928, following which this suit was brought.

Plaintiffs urge (I) that the interest which the widow had at the time of decedent's death in one-third of the personal estate, after the payment of debts, was illegally included in the gross value of decedent's taxable estate, because (A) it was not subject to the payment of the expenses of administration, and therefore did not come under Section 402(a) of the 1921 Revenue Act, 42 Stat. 278; and (B) it was neither dower, nor an interest existing by virtue of a statute creating an estate in lieu of dower, and therefore did not come under Section 402(b) of the 1921 Revenue Act.

Plaintiffs also urge (II) that the widow's dower interest in decedent's lands was illegally included in the gross value of decedent's taxable estate, because (A) under the Illinois law, dower interest, whether inchoate or consummate, was the widow's separate property, and never was subject to deceased's debts, or to his control, and never was any part of deceased's estate, and could not be valued as a part thereof; and (B) that Section 402(b) of the 1921 Revenue Act is unconstitutional, if construed to include the widow's dower, because it is retroactive, and also because it is a direct tax.

A preliminary question to be settled is whether the amount of property to be included in decedent's taxable estate is to be determined as at the time of his death, or whether it is dependent upon an election to be subsequently exercised by the widow.

In the instant case the widow elected to and did take under the will, and the Government now argues that since she actually took under the will she took as a devisee and legatee, and therefore there is no occasion to consider the question of whether or not the taxable status of the estate should be determined as of the time of decedent's death, or the question of whether or not her dower right and her statutory interest in personalty at the time of his death should be excluded therefrom, since

in reality those interests never passed to her because she waived them by choosing not to take them; but rather, on the contrary, at a later date elected to and did take under the will.

On the other hand plaintiffs insist that the taxable status of decedent's estate must be determined as of the time of his death, and that any subsequent action by the widow in electing to take under the will is entirely immaterial, because, even where she elects to take under the will in Illinois, she takes not as an ordinary devisee or legatee in succession to her husband, but rather in exchange for the statutory and dower interests which by operation of law had always belonged to her.

In the case of Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647, the Government urged that the value of a life estate must be computed as of the date of the death of decedent according to the life expectancy of the life tenant on the basis of mortality tables, and regardless of the fact that the life tenant actually died within six months after decedent's death and prior to the time fixed by the Estate Tax Law for the filing of an estate tax return and payment of the tax. Mr. Justice Holmes speaking for the court said: "The question is whether the amount of the diminution [of a residuary gift to charity], that is, the length of the postponement, is to be determined by the event as it turned out, of the widow's death within six months, or by mortality tables showing the probabilities as they stood on the day when the testator died. The first impression is that it is absurd to resort to statistical probabilities when you know the fact. But this is due to inaccurate thinking. The estate so far as may be is settled as of the date of the testator's death. * * * The tax is on the act of the testator not on receipt of property by the legatees. * * * Therefore, the value of the thing to be taxed must be estimated as of the time when the act is done. * * * Tempting as it is to correct uncertain probabilities by the now certain fact, we are of opinion that it cannot be done, but that the value of the wife's life interest must be estimated by the mortality tables."

In Carter v. United States, D.C., 3 F. Supp. 782, 784, where the court was considering the question of whether the value of the interest in decedent's estate which the widow could have taken under the local law was taxable when the widow in reality elected to take under the will, the court said: "The power ought not to rest with any person to avoid or defeat a tax by a mere personal election to do one of three permissible things. * * * For it must be borne in mind that an estate tax accrues at the date of the death of the decedent, and not afterwards; so it cannot be known at such date which of the three provisions of the local law the living spouse may elect to accept."

In United States v. Provident Trust Co., 291 U.S. 272, 54 S.Ct. 389, 78 L.Ed. 793, the court held that the value of the taxable property must be determined from data available at the time of decedent's death.

The very language of the statute itself indicates plainly that the value of decedent's estate shall be determined at the time of his death, by including therein any interest of decedent's which exists at the time of his death. See also Scott v. Commissioner, 8 Cir., 69 F.2d 444, 92 A.L.R. 531; Scott v. Becker, D.C., 2 F.Supp. 903.

A careful consideration of all of the cases, as well as the plain language of the Act itself, leads me to the conclusion that the taxable status of decedent's property must be determined as of the time of his death, unaffected by any subsequent action on the part of the widow in electing to take under the will.

This brings me to a consideration of the questions (A) whether or not the widow's statutory interest in decedent's personalty, and (B) her dower right in his realty, should be included in the gross value of decedent's taxable estate. The widow's rights and interests in decedent's estate must be determined by the Illinois law. Randolph v. Craig, D.C., 267 F. 993, which was based on DeVaughn v. Hutchinson, 165 U.S. 566, 17 S.Ct. 461, 41 L.Ed. 827. Chapter 41, Smith-Hurd Stats.Ill., Chapter 41 Illinois Revised Stats.1921, which is an Act to Revise the Law in Relation to Dower, in force at the time of decedent's death, provides:

"Sec. [§] 1. That the estate of curtesy is hereby abolished and the surviving husband or wife shall be endowed of the third part of all the lands whereof the deceased husband or wife was seized of an estate of inheritance at any time during the marriage, unless the same shall have been relinquished in legal form. Equitable estates shall be subject to such dower, and all real estate of every description contracted for by the deceased husband or wife, in his or her lifetime, the title of which may be completed after his or her decease."

"Section [§] 10. Any devise of land, or any estate therein, or any other provision made by the will of a deceased husband or wife for a surviving wife or husband, shall, unless otherwise expressed in the will, bar the dower of such survivor in the lands of the deceased, unless such survivor shall elect to and does renounce the benefit of such devise or other provision, in which case he or she shall be entitled to dower in the lands and to one-third of the personal estate after the payment of all debts."

"Section [§] 11. Any one entitled to an election under either of the two preceding sections shall be deemed to have elected to take such * * * devise or other provision, unless, within one year after letters testamentary or of administration are issued, he or she shall deliver or transmit to the county court of the proper county a written renunciation of such * * * devise or other provision."

"Section [§] 12. If a husband or wife die testate, leaving no child or descendants of a child, the surviving husband or wife may, if he or she elect, have, in lieu of dower in the estate of which the deceased husband or wife died seized (whether the right to such dower has accrued by renunciation as hereinbefore provided, or otherwise), and of any share of the personal estate which he or she may be entitled to take with such dower, absolutely, and in his or her own right, one-half of all the real and personal estate which shall remain after the payment of all just debts and claims against the estate of the deceased husband or wife. The election herein provided for may be made whether dower has been assigned or not, and at any time before or within two months after notification to the survivor of the payment of debts and claims, and not afterwards." Smith-Hurd Stats.Ill. c. 41, §§ 1 note, 10, note, 11, 12 note. The Revenue Act of 1921, in force at the time of decedent's death provides:

"Sec. 401. That, in lieu of the tax imposed by Title IV of the Revenue Act of 1918, a tax equal to the sum of the following percentages of the value of the net estate (determined as provided in Section 403) is hereby imposed upon the transfer of the net estate of every decedent dying after the passage of this Act, whether a resident or nonresident of the United States:

* * * * * * *

"Sec. 402. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

"(a) To the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate;

"(b) To the extent of any interest therein of the surviving spouse, existing at the time of the decedent's death as dower, curtesy, or by virtue of a statute creating an estate in lieu of dower or curtesy;" 42 Stat. 277, 278.

In passing I may say that I have in mind that in 1926 Sec. 402 (a) of the above Act was modified by striking out everything after the words "at the time of his death", section 302(a), 26 U.S.C.A. § 411(a), and both sides admit that as a result the question here involved, respecting the widow's statutory interest in her husband's personalty, will probably never again arise. However, it is the 1921 Law as it then existed which I am called upon to construe, interpret and apply in the present case, and it is clear that such interpretation must be in accordance with the Laws of the State of Illinois, where the property was located.

Section 10 of the Illinois Dower Act creates for the surviving widow a one-third interest in her deceased husband's personalty "after the payment of all debts." Section 402(a) of the Revenue Act, which defines the interest which is taxable as a part of decedent's estate, provides that it shall be "to the extent of the interest therein of decedent at the time of his death which after his death is subject to the payment of charges against his estate and the expenses of its administration and is subject to distribution as part of his estate." Debts are obligations created by the deceased and are existing at the time of his death, while expenses of administration are obligations incurred after his death by his representatives in administering his estate. An examination of the Illinois statutes governing descent and the administration of estates, and the legislative history of the Dower Act, in force in 1922, would indicate that the legislature intended to discriminate between "debts" and "expenses of administration," and did in fact treat them as two different and distinct items, and intentionally provided that a widow should be entitled to a one-third interest in her de-

ceased husband's personalty, subject only to the payment of his debts. This is done evidently for the benefit and protection of the widow, even though it be sometimes at the expense of creditors. In Fitzgerald v. Glancy, 49 Ill. 465, where deceased left real estate but no debts, a petition was filed by the administrator to sell real estate to pay administration expenses. The court held that even though real estate may be subject to the payment of debts, it is not subject to the payment of expenses of administration, and said: "The policy of our law most clearly is, that the real estate of decedents shall not be sold * * * except to pay debts due and owing at the death of the decedent. * * * the very purpose of the application, as we regard the statute, is to obtain a fund by the sale of real estate, there being no personal estate, to pay debts so existing, and an administrator, by no law of which we are cognizant, can contract debts against the estate he represents, and to pay them, obtain an order to sell the land."

In Walker v. Diehl, 79 Ill. 473, the court, in considering the Illinois statute authorizing sale of real estate when personal property is insufficient to pay debts, said: "We understand the law to be well settled that real estate can only be sold, in a proceeding of this character, to liquidate debts which were in existence at the time of the death of the decedent. Fitzgerald v. Glancy, 49 Ill. 465. An administrator can not contract or incur indebtedness in the settlement of an estate, and make such indebtedness alone the foundation for a decree to sell real estate. * * * The policy of the law can not uphold a decree of sale, unless the petition avers, and the proof sustains the averment, that the decedent, at the time of his death, left debts that were legally chargeable upon his estate."

The Supreme Court of the United States, in Crooks v. Harrelson, 282 U.S. 55, 51 S.Ct. 49, 50, 75 L.Ed. 156, has held that debts and expenses of administration are different and distinct things, and the fact that property is subject to the payment of debts of a deceased does not make it also subject to payment of expenses of administration, saying: "Nor will it do to say that the words, 'charges against his estate,' include expenses of administration, for plainly they are different and distinct things, generally so classified in the settlement of estates of decedents, and so regarded by Congress, as evidenced by the discriminating terms of the statute."

Crooks v. Harrelson, supra, involved a statute of Missouri providing for the order in which demands against the estate shall be paid, and requiring, as does the law of Illinois, that expenses of administration be paid before debts. The court there decided that while payment of expenses of administration are given priority over payment of debts, nevertheless property subject to the payment of debts is not subject to the payment of administration expenses.

In McFaddin v. United States, Ct. Cl., 13 F.Supp. 766, involving a statute of West Virginia, which subordinated all claims to the payment of funeral expenses and charges of administration, as does the Illinois statute, the court nevertheless held that the property there concerned, although subject to the payment of debts, was not liable for the payment of expenses of administration and could not be included as part of the taxable estate.

In Crooks v. Harrelson, supra, the court was considering a provision of the 1918 Revenue Act, which was identical with Section 402(a) of the 1921 Act, and said: "The conditions expressed in clause (a) are to the effect that the taxable estate must be (1) an interest of the decedent at the time of his death, (2) which after his death is subject to the payment of the charges against his estate and the expenses of its administration, and (3) is subject to distribution as part of his estate. These conditions are expressed conjunctively; and it would be inadmissible, in construing a taxing act, to read them as if prescribed disjunctively. Hence, unless the appointed interest fulfilled all three conditions, it was not taxable under this clause."

And again, 282 U.S. at page 61, 51 S. Ct. at page 51, 75 L.Ed. 156, in the same case the court further said: "Finally, the fact must not be overlooked that we are here concerned with a taxing act, with regard to which the general rule requiring adherence to the letter applies with peculiar strictness. In United States v. Merriam, 263 U.S. 179, 187, 188, 44 S.Ct. 69, 71, 68 L. Ed. 240, 29 A.L.R. 1547, after saying that 'in statutes levying taxes the literal meaning of the words employed is most important for such statutes are not to be extended by implication beyond the clear import of the language used,' we quoted with approval the words of Lord Cairns in Partington v. Attorney General, L.R. 4 H.L. 100, 122, that 'if the crown seeking to recover the tax, cannot bring the subject within the letter of the law, the subject is

free, however apparently within the spirit of the law the case might otherwise appear to be.'" See also United States v. Field, 255 U.S. 257, 41 S.Ct. 256, 65 L.Ed. 617, 18 A.L.R. 1461.

■■ If the interest existing at the time of decedent's death was not subject to the payment of expenses of administration, or was not subject to distribution as part of the estate, then it does not fall within the property covered by Sec. 402(a) of the Revenue Act. Both litigants agree that Section 402 (a) is the only section under which the widow's statutory interest in personalty may be taxed. Since that section requires that the interest of the decedent must be such an interest as after his death is subject to the payment of charges against his estate and expenses of administration, it is perfectly apparent that decedent's interest in the personal property here involved would fail to come within Sec. 402 (a) of the Revenue Act, since under the Illinois law it is not subject to the payment of expenses of administration.

I am of the opinion that the widow's one-third statutory interest in decedent's personal property was not subject to the payment of administration expenses, and for that reason does not come within Section 402(a) of the 1921 Revenue Act describing the property to be included in decedent's taxable estate, and therefore the Commissioner should have excluded it in determining the taxable value of decedent's property.

As to (II) the widow's dower in the lands: Plaintiffs contend (A) that the value of the widow's dower in her deceased husband's lands was improperly and illegally included in computing decedent's taxable estate, and urge (B) that if the construction contended for by the defendant is sustained, then Section 402(b) is unconstitutional, as being retroactive, and also as being a direct tax.

Section 402(b), supra, is the authority under which defendant asserts its right to include the value of the widow's dower in computing the decedent's taxable estate.

■ It seems perfectly clear to me that the sole question here is whether or not such dower was a part of the decedent's estate at the time of his death; or whether, on the contrary, it was the property of the widow at the time of his death. In the instant case this question must be determined under the laws of the State of Illinois, where the property was situated, since it is within the sovereign power of the State of Illinois to create and construe this dower interest.

An examination of the cases of the courts of the various states involving the question of dower discloses that there are two lines of decisions; in one the state courts have held that by virtue of their state statutes dower is an interest vested in the widow by operation of law; in the other, the state courts have held that by virtue of their state statutes dower is acquired by the widow in succession to her husband. The courts of Illinois have determined that dower is an interest vested in the wife by operation of law, and not one acquired by her in succession to her husband. In the case of Randolph v. Craig, D.C., 267 F. 993, 995, Judge Sanford, speaking for the court, said:

"The crucial question then is whether upon the husband's death the widow is entitled to homestead, dower and a year's support by transfer from her husband's estate and in succession to him, or whether her right to these interests is vested in her by operation of law independently of her husband, and not transmitted to her through him. On this question the statutes and rules of decision in Tennessee and Arkansas, where the decedent's property is located are controlling. DeVaughn v. Hutchinson, 165 U.S. 566, 570, 17 S.Ct. 461, 41 L.Ed. 827.

"It is settled in Tennessee that a widow's right to dower is not a succession to the title of her husband upon his death; that she does not succeed in her dower to her husband's title, but derives it by the marriage and her right as wife, to be consummated in severalty to her upon her husband's death; and that she takes it adversely to the inheritance from the husband. [Citing authorities.] This is likewise the law in Arkansas. [Citing authorities.] A fortiori this is true as to the widow's homestead in Tennessee, which is likewise not a purchase from her husband, but an incumbrance upon the title of the heir at law originating with the marriage and consummated by the husband's death. [Citing authorities.] And so in Tennessee the widow does not succeed to her husband's title to the property set apart as a year's support, but acquires it adversely to his administrator by virtue of the statute conferring the right. [Citing authorities.] It results that as the widow does not receive either her homestead, dower or year's support in

succession to her husband or by transfer from him, but takes them under the statutory provisions vesting these rights in her independently of her husband and adversely to his estate, the property assigned to her as dower, homestead and year's support, not being transferred to her from her husband, is not a part of his estate upon which the tax is imposed by the Federal Estate Tax."

This is also the law in Illinois, where the wife acquires her dower interest in her husband's lands by operation of law, concurrently with his acquisition thereof. The husband never owns, or controls, or has any power of disposition over her dower interest, and it is always the wife's property, and not that of the husband. The Supreme Court of Illinois, as early as 1844, in the case of Sisk v. Smith, 6 Ill. 503, 1 Gilman 503, held that the wife's dower interest attached on land, and during coverture is a title in expectancy to a freehold estate, which is perfected by the husband's death, but nevertheless the death of the husband does not give the wife any new interest or estate, but simply consummates a pre-existing interest or estate. In Blankenship v. Hall, 1908, 233 Ill. 116, 84 N.E. 192, 122 Am.St.Rep. 149, the Supreme Court of Illinois held that during coverture the wife's inchoate right of dower attaches at the moment the husband's right to the realty attaches, and the husband cannot convey or encumber the property so as to divest or prejudice that dower right without the wife's consent; nor can his creditors, by any proceeding, destroy or impair it.

Therefore, I regard it as well settled in Illinois that the wife's dower interest is never at any time the property of her husband, but is always solely her own, and that at the time of the death of the husband her title to dower is perfected by operation of law, and not by transfer or succession, so that at the moment of her husband's death (which is the time designated by the Revenue Act for determining the taxable value of decedent's estate) the entire vested title is in the wife, and there is no interest in the estate.

In the case at bar, then, it follows that at the time of the death of decedent the wife's dower right and interest, which had theretofore existed in her, was consummated, and that such dower right and interest, which had never at any time belonged to decedent, or been a part of his estate, was then perfected in the widow.

The fact that the widow later renounces her dower, and chooses to take something else under the will, is simply a trading of her dower (which had always belonged to her and was never a part of her husband's estate) for other property which did constitute a part of the estate. Emmert v. Hill, 226 Ill.App. 1; Canavan v. McNulty, 328 Ill. 388, 159 N.E. 782.

But it is contended by defendant (ignoring the express language of the Revenue Act determining the taxable estate as "at the time of decedent's death") that acceptance by the widow under the will at some later time than the decedent's death, and the waiving of her dower, had the effect of causing her dower interest to become a part of decedent's estate at the time of his death. This, however, is not the fact, neither is it the law in Illinois. In Emmert v. Hill, supra, the court said: "it is undoubtedly the law in this State that what a widow is entitled to out of the estate of her deceased husband is not by way of bounty like other general bequests. If she takes under the will she does so at the penalty of relinquishing what she is entitled to under the statute. In other words, the provisions for her contained in the will are but an offer of her husband to purchase her statutory rights at a price fixed by his bequests to her. No matter what may be the view taken by courts of other jurisdictions upon this question, the law here announced is settled in this State. Carper v. Crowl, 149 Ill. 465, [36 N.E. 1040]; Bell v. Nye, 255 Ill. [283] 287 [99 N.E. 610, 42 L.R.A.,N.S., 1127]; Blatchford v. Newberry, 99 Ill. 11; Lewis v. Sedgwick, 223 Ill. [213], 220 [79 N.E. 14]. * * * Under the law of Illinois a widow has a fixed legal right in her deceased husband's estate. This cannot be taken away from her without her consent. * * * The right which a husband has to dispose of his property by will is only a legal one and it is subject to the paramount rights of his widow in his estate. As we have heretofore observed, he cannot disinherit her. Neither can he reduce the quantum of her interest in his estate except with her consent."

Defendant's contention, therefore, departs from the facts and the law. If a widow chooses to take under a will, and renounce her right to dower, she must do so in the formal manner required by the statute, and as she does this after the death of her husband, she simply exchanges her already vested and perfectly good title to her

dower for something which she herself deems preferable. The widow's action in this regard only follows the well settled law of Illinois that the death of the husband gives her a perfect title to her dower interest, and she is at liberty to exchange it, or to do anything she pleases with it.

Bearing in mind that the object of Congress in enacting the Estate Tax Law must have been based on the theory that death produces a shifting of economic benefits from the deceased, and that the tax is imposed on the right to transmit property from the dead to the living, it quite naturally follows that any construction of the Revenue Act which would tax a dower interest, which before decedent's death was already in his widow, would be contrary to the plain language and intent of the Revenue Act. The widow's dower interest was not transmitted by the death of the decedent; it was unquestionably the property of the widow for many years before the decedent's death.

The existence of Section 402(b) in the Revenue Law must not be taken as an attempt by Congress to include in decedent's taxable estate property which did not belong to and never had belonged to decedent, but had always belonged to the widow. I must assume that this section of the statute was intended only to cover those cases where, by the law of the state, dower was regarded as always constituting a part of the husband's estate and passed to the wife in succession to her husband, and which, therefore, on the death of the husband, could be regarded as a transfer of a portion of his property to his widow. But this is not the law in Illinois, where it is settled that the widow's dower interest is never at any time the property of her husband, but always is solely her own.

If, under the guise of an estate tax, the Congress might provide that a decedent's taxable estate should also include one-half of money belonging to a stranger, such a law of course would not be valid. This, as I see it, is in effect defendant's position when it urges that Section 402 (b) should be construed to include not only decedent's estate, which was transferred by and at the time of his death, but in addition the property of his wife which never at any time had belonged to him. Such a construction not only is not borne out by the letter of Section 402(b), but I believe if given that meaning would be destructive of the power of Congress to impose an estate tax based properly only upon a transfer of decedent's property. It would be strange indeed if Congress, by a single section of this law, intended thereby to destroy its undisputed right to impose such an estate tax.

And further, if we assume that the dower interest of decedent's widow was taxable as a part of his estate, that then might be imposing a direct tax by the Federal Government upon the property of such widow.

Another constitutional question might arise if we were to assume that Congress, by a law passed in 1921, intended to disturb the estate of dower which under Illinois law had been created, established and existing long prior thereto because it would be doubtful if Congress would have authority to interfere with such previously well-settled property rights, which Illinois alone under its soveign power had the right to determine. It is also significant that Congress did not, in specific language, make the Revenue Act of 1921 retroactive.

In arriving at these conclusions I have had in mind and have applied the rule that acts of Congress shall not be construed in such a manner as to render their constitutionality doubtful. (Bingham v. United States, 296 U.S. 211, 56 S.Ct. 180, 80 L.Ed. 160, and Lewellyn v. Frick, 268 U.S. 238, 45 S.Ct. 487, 69 L.Ed. 934); as well as the rule that in interpreting tax statutes they are to be strictly construed against the government so as to exclude any implications beyond the language used. Crooks v. Harrelson, supra, and Gould v. Gould, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211.

However, I as so definitely of the opinion that nothing in the language of the Revenue Act of 1921 authorized the defendant to include dower as it exists in Illinois in the taxable estate of decedent, that it is unnecessary for me to decide any question of the constitutionality of the act.

The demurrer of defendant will be overruled, and leave given defendant to plead within thirty days.