## Adam McCullom

*v.*

## Abraham Chidester, Admr. etc.

1. NUNCUPATIVE WILL—*whether personalty devised thereby is subject to the payment of debts.* A testator, by a nuncupative will, which was reduced to writing and probated as required by the statute, bequeathed his personal property to a person named. The deceased died seized of unincumbered real estate sufficient to pay his debts, of which he made no devise: *Held,* that the legatee in the will took the personalty as an absolute conveyance

discharged from the payment of the debts. Where there is a bequest of the personalty, and realty remains, of which there is no devise, creditors of the estate must first resort to such realty.

2. JURISDICTION IN CHANCERY—*defense at law.* The legatee in the will was duly appointed executrix by the proper court, and executed bond with security, which was approved, and she took possession of the personal property. Afterwards, her letters were revoked, and an administrator *de bonis non* was appointed, who brought suit on the bond of the executrix. The surety on the bond filed a bill in chancery to restrain the prosecution of the suit: *Held,* that the bill could not be maintained, as the defense was good at law. The act of the executrix in taking possession of the personalty, and using it as her own, could not be deemed in law a *devastavit,* so as to authorize a suit on the bond. Her neglect to sell the property and apply the proceeds to the payment of debts—the same being vested in her by the will, and there being sufficient realty not charged with any legacy to pay the debts—could not be construed into mismanagement or waste of the estate.

WRIT OF ERROR to the Circuit Court of Clay county; the Hon. RICHARD S. CANBY, Judge, presiding.

Mr. B. B. SMITH, and Messrs. HOGLE & CHESLEY, for the plaintiff in error.

Messrs. COPE & BOYLES, for the defendant in error.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

The object of the bill in this case was to enjoin the further prosecution of a suit.

The first question to be determined is, had the complainant the right to seek relief in chancery?

The facts disclosed are, that one Kinnaman made a nuncupative will, which was reduced to writing and probated as required by the statute; that he gave his personal property to Rowena Weir, who was duly appointed executrix by the proper court, and executed bond with security; that the bond was approved, and she took possession of the personal property; that afterwards her letters were revoked, and defendant in

error was appointed administrator *de bonis non;* that the deceased died seized of unincumbered real estate of the value of $2000; that debts to the amount of $241 had been probated against the estate; and that suit had been commenced upon the bond by the administrator *de bonis non* against the complainant as surety.

There was no necessity to invoke the aid of chancery. The facts presented, if a defense at all, constituted a good defense at law. The nuncupative will, if good and available in law, vested the personalty in Rowena Weir. It was an absolute conveyance of such property. In taking possession of it, and in failing to appropriate it to the payment of the debts of the deceased, she committed no breach of her bond, provided there was property sufficient to satisfy the debts.

Her acts in taking possession of and using her own property could not be deemed in law a *devastavit,* so as to authorize a suit upon the bond. A *devastavit* must arise from direct abuse, maladministration, or neglect. The appropriation of the property to her own use, which was given to her by the will, was no wilful waste of it. The neglect to sell and apply the proceeds in payment of the debts, if the property was vested in her by the will, could not be construed into mismanagement or neglect of the estate.

What, then, was the effect of the will? Did it bequeath the personal property to Rowena, subject to the payment of debts? Does the law authorize a nuncupative will only that the promise, which affords hope and expectation, may be suddenly blighted? Under such construction, one, *in extremis,* could not bequeath a valued memento to a much loved friend, though he might have millions with which to pay his debts.

We have been referred to no authority bearing upon the question under discussion, and, after a diligent examination, have been enabled to find none.

It is a universal maxim that the design and intent of the framers of the law shall prevail. It is our duty to ascertain the object and meaning of the statute, from the act itself and

from other acts *in pari materia*. The interpretation should never lead to an absurdity nor defeat the object of the law.

Ordinarily the personal property of a deceased is the primary fund for the payment of debts; but, unless in this particular case the provisions of the statute are to be regarded as having modified the rule, then the statute as to *nuncupative* wills will often be inoperative, though the deceased may leave property sufficient to fulfil his will as well as to satisfy his creditors.

Here is real estate of the value of ten times the amount of the debts, chargeable with no legacy, unincumbered and liable to be converted into money by the most summary proceedings. The creditors are in no danger of loss, or even of delay, by compelling them to rely upon the sale of the realty, for the money can be realized by a sale of it almost as readily as by the sale of the personalty. On the other hand, grant to the creditors the right first to resort to the personalty, and the devisee is deprived of all benefit under the will, and the intention of the testator is entirely frustrated. A rule of law which has no application, by reason of the facts, should not operate such marked injustice. In the one view, the intention of the testator and the object of the statute may both be preserved, and the creditors fully satisfied without expense or unreasonable delay. In the other view, without being necessary for the protection of creditors, the devisee is deprived of her bequest, given by authority of law, and the will is disregarded.

Courts should never be driven to a construction which leads to an absurdity, confounds the law and thwarts the intention.

What is the object of the statute? Its own language affords the answer: "A nuncupative will shall be good and available in law for the conveyance of personal property thereby bequeathed." It transfers the property from one use to another. What was the intention of the testator? It was to give his personal property to the devisee. We know, then, the purpose of the law and the design of the giver. They must be effected if consistent with the rules of law. No principle of

law is violated, in this case, by strict fulfilment of the object and intent, for ample provision exists for all.

It is the general rule that the personal estate shall be primarily applied in discharge of the personal debts of the testator, but it may be exempted by express words or manifest intention. Bacon's Abridg. title Executor, Lib. 2. The exemption may be manifested by plain intention or by making of the personalty a specific legacy.

In *Burton* v. *Knowlton*, 3 Ves. 107, the testatrix devised all her freehold, lands and tenements to trustees to sell and convey, and with the money to pay off and discharge the debts, and bequeathed the rest and residue of her personal estate, specifically, to a person named. It was held that the personal estate was exempted from the payment of debts.

See also *Milnes* v. *Slater*, 8 Ves. 295.

In *Fenwick* v. *Chapman et al.* 9 Peters, 461, it was held that a testatrix may charge her real estate with the payment of her debts so as to make the manumission of her slaves effective without prejudice to creditors, and that the words, "after my debts and funeral expenses are paid, I devise as follows," amount to such a charge.

The law of Maryland permitted the manumission of slaves if it should not be in prejudice of creditors. The slaves were in the will declared to be free after the death of the testatrix. It was in proof that the deceased left real estate more than sufficient to pay the debts, and it was held that the creditors must look to the real estate for the payment of their debts.

In the case at bar the testator indicated most unmistakably his intention to exempt his personal estate from the payment of his debts, and this intention should be carried into effect.

There is another rule in equity which has direct application to the facts of this case.

Where one claimant has more than one fund to which to resort, and another claimant only one, the first claimant shall resort to that fund upon which the second has no lien. Story

Eq. J. sec. 558; *Trimmer* v. *Rayne*, 9 Ves. 209; *Aldrich* v. *Cooper*, 8 Ves. 382; *Selby* v. *Selby*, 4 Russ. Eng. Ch. 336.

It is provided in the statute that when it can be ascertained that the personal estate of any testator is insufficient to pay the just claims against the estate, and there shall be any real estate to which he had claim or title, the same may be sold, when a just and true account of the personal estate shall have been made.

In this case the personal estate has been disposed of, subject to the payment of debts, if the real estate prove insufficient. A just and true account may, therefore, be rendered of it by the administrator, within the sense and spirit of the statute.

We think that the creditors should first exhaust the real estate; and in this way the entire law is maintained, the rights of all parties are preserved, and the disposition of his personal property by the deceased is firmly fixed.

As the defense, however, was ample at law, the decree of the court sustaining the demurrer to the bill is affirmed.

*Decree affirmed.*